Oh yay, oh yay, oh yay. All persons having a manner of form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admitted to draw a night and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Mr. Earley, are you ready? Yes, Your Honor, I'm ready. Good morning. May it please the Court. My name's Eric Earley. I represent Appellant Don Blankenship and I've reserved seven minutes for rebuttal. The ultimate question, as we all know, is whether the evidence in the record could support a reasonable jury finding that Don Blankenship has shown actual malice by clearing convincing evidence. That's right out of Anderson v. Liberty Lobby. And the circumstantial evidence, as we argued below, as we'll argue again here today, in this case, when interpreted most favorably to Don Blankenship, required that the district court rule that a reasonable jury applying the clear and convincing evidence standard could reasonably have found for Don Blankenship. And just some important quotes from some of the key controlling cases, again Anderson v. Liberty Lobby, are holding that the clear and convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial by affidavits. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge. And importantly here, which is something I'll be talking about, and respectfully, the trial court did not handle properly, let's say, is the trial court weighed the evidence in isolation. They did a surgical review of the evidence here. They didn't look at the entire story, the full context, the full picture, as would be presented to a jury in a court of law. I've tried a few cases. Excuse me, issues are still at the heart of this case that need to be decided by fact. Well, Your Honor, several. The main one that you think is the... Well, I'll give you one main one. Chris Hayes, his credibility of MSNBC must be directly looked at. He has testimony, he's testified that he didn't remember, for example. We have evidence that shows that that very intelligent fellow, at a minimum, the jury can determine whether or not what he said was accurate, that he did not remember his prior knowledge from the evidence that we presented. He knew Don Blankenship was a misdemeanor, not a felon. Then when Mr. Hayes was called to testify in this case, he testified in certain ways. I can give you the specific sites, but his credibility is called directly into question. Several of the Fox people are called directly into question. And the reason their credibility is called directly into question is, of course, they all said, well, I forgot, I don't remember, I didn't know. And as we all know here, there's a very tough standard. We have subjectivity, right? What was in the person's head? And that's why it is particularly important, not only for the trial court to go through all reasonable inferences in Don's favor. There are no reasonable inferences made in Don Blankenship's favor. But the jury can go, could and must go through all reasonable inferences. And when you look at the totality of the evidence, as opposed to isolated in little snippets here and there, let me, you know, Hart Hanks, the record must be record. Here's a very interesting case. Uramo versus Rolling Stone, LLC, 209 F sub 3862 at page 875 or 87. Leave you back to that Hank's heart. Yes. I read that case and understood it. They said that malice is a question of law for the court to decide and that the burden is on you to present sufficient evidence to show subjective intent of the kind required by Sullivan. And so that the answer you just gave to Judge Gregory, the most you could conclude is that they were liars. But we're still lacking the question. I mean, it's a little bit like deciding negligence as a matter of law. If somebody advances a theory of negligence and he just fails to establish negligence, even if true, then we decide it's a matter of law. And that's what I thought the Supreme Court said in Hanks, which was this is a question of law to be decided by the court and the burden's on you to come forward with enough evidence to cross the line. Now, if you do, it seems to me, then we get a trial. And so that probably should be the argument here that you're focused on, that you came across with enough evidence of subjective intent that's imputable to each particular person who you accused of violating Mr. Blankenship's rights. Your Honor, I can't disagree with the word you said. That's what the law says. But what happened here, it certainly can be decided by the trial court as a matter of law as to whether or not sufficient evidence has been provided so a jury can determine whether or not actual malice existed. The problem here is the determination by the court did not take into account the entire context along with all of the evidence presented. And we there were clearly issues of fact as to whether or not a jury as to whether or not actual malice could be found. And so what is the evidence of that's what I'm getting to is the actual evidence of malice. You have, I think, nicely laid out the evidence of motive. We have some, particularly in the Fox case, we have those emails coming in showing that there was a motive to lean on or hit Blankenship. But of course, as you know, that's the heart of the protected activity in both Hanks and a couple of other Supreme Court cases. So the question is, where do we get to the high level of mental maliciousness that is required under this pretty strict standard? And they have to have clear and convincing evidence. We could question Sullivan, and I think people are starting to question Sullivan in the public debate. But as of now, that's as you recognize, that's a that's a high standard. And no doubt we're stuck with Sullivan right now. Hopefully that will change one day. But let me say one thing, Your Honor. Again, we have to put ourselves in a courtroom where a jury would be sitting, which is completely different from the setting where whoever went through every one of these snippets of evidence was sitting. And a courtroom where there is a jury sitting gets a full picture portrayed for them. And it's within that picture. It's within that story. When they hear the very same evidence that we presented to the court, and I can go through a bunch of that evidence for you, a jury can reasonably infer that, yes, indeed, these statements were made with actual malice. This case first, then I'm going to get into what was going on at that time, the overall picture that the evidence supports. This case that I just read you about called Aramo, arguably, and this goes right to the heart of what I just said, by the way. There's a quote. Arguably, a reasonable jury can find that none of the evidence presented independently supports a finding of actual malice by clear and convincing evidence. Taken as a whole, however, a jury could conclude otherwise. And that's what we're talking about here. It must be taken as a whole. The trial court did not. What was happening here at the time? It was April. It was May 2018. Don Blankenship was running for U.S. Senate. But how does that show the evidence? What was the actual evidence? Well, I'll give you the actual evidence, Your Honor. And frankly, you're not going to have anybody on the other side come out and say, yeah, you know, when I said that about Don Blankenship, I knew it was a misdemeanor. But I lied and said he was a felon because I knew that that would make him look much worse. But if every one of these people said Mr. Blankenship was a convicted criminal who served a year in jail, would we be here? If they told the truth, we would not be here. I'm saying said just that. In other words, they all reported that this man's running for office and he's a convicted criminal who has served one year in jail. We would not be here, Your Honor. I thought so. Really, we're not talking about the notion that the common law notion that a person is convicted of a crime is per se libelous. This man was convicted of a crime. What we're arguing about is whether these people accurately labeled the level of criminal conduct. And as what you read in the record again and again, people didn't understand the difference between a felony and a misdemeanor. You know, in the state of Maryland, I think you can have two year misdemeanors or three year disdemeanors. Federal court, it's a one year definition. I don't know what it is in West Virginia, but it seems to me that many people on the street and many attorneys have a hard time defining the difference between a misdemeanor and a felony, especially when the man has served a year in jail. We had that one email. Somebody said, you mean he served a year in jail and he wasn't a felon? Of course, if he served a year and a day, he would be. And so the problem here is they're clearly dumping on him. They're clearly targeting him. You presented, I think, convincing evidence on that. Politically, they were trying to oppose his candidacy. But that's the heart of the First Amendment debate going on. The question is whether the use of the label, not the actual fact he was a convicted criminal, he did serve a year. But the question is, the use of the label felon, was that maliciously done? And that that requires quite a bit of evidence. Well, Your Honor, we presented that evidence with all due respect. And a jury can determine and certainly a jury can reasonably infer from all the evidence whether or not that calling Don Blankenship a felon and a convicted felon, rather than calling him a convicted misdemeanor, was done intentionally to harm. The word misdemeanor, I can tell you, because that word is almost unknown to people. They call him a convicted criminal. Let them call him convicted of a misdemeanor. When was the last time? And I won't say it that way. I can't remember the last time somebody who was dumping on a candidate that they had actual animus towards was saying, and he was convicted of a misdemeanor. Never do it. They'd look ridiculous. But Your Honor, the key in this case isn't the misdemeanor aspect. The key in this case is he served a year in jail and people can't understand how you can serve a year. I think the person on the street would say a misdemeanor is something you get fined for, whatever, but you don't serve time. But if you're going to serve a year in jail, it's a serious crime. Even your client noted that he was the only one in the prison that had been convicted of a misdemeanor. Everyone else was had been convicted of a felony. With respect, Your Honor, we have Chris Hayes, who knew in advance he was convicted of a misdemeanor. We have S.E. Cupp, CNN, knew in advance he was convicted of a misdemeanor. We have many people at Fox, knew in advance he was convicted of a misdemeanor. And then what happened? And the evidence shows Don Blankenship shocked the world at that debate on May 1st, which, by the way, one can infer and a jury can certainly reasonably infer that all the higher ups at Fox watched their debate. The only nationally televised senatorial debate in the primary debate in the nation right then. Don Blankenship says, I was not convicted of a felony. I did a year, but I was only convicted of a misdemeanor. And so they knew beforehand. And yet things changed because after that debate, as our evidence also shows, Don Blankenship was surging in the polls and they didn't as the evidence also shows. They did not want Don Blankenship to win the primary because they, meaning Mitch McConnell in particular, did not want Don Blankenship to win the primary because he believed he could never beat Joe Manchin. And plus, Mitch McConnell's animus to Don Blankenship cannot be said strong enough. The district court on this issue of felon versus misdemeanor said it very clearly. And we agree with this. It was in their motion to dismiss ruling. It's a quote, a person either is or is not a felon. There is no in-between room for substantial truth. And, you know, the D.C. Circuit put it starkly when the legislature designates a crime as a felony, it signals to the world the highest degree of societal condemnation. That was the Medina versus Whittaker court, 913 F. Third, 15, 152. And on the Illinois court said society at large views a felon far differently than a person who has committed an offense resulting in a misdemeanor conviction. That's Myers versus the Telegraph, 773 Northeast, second, 192, 198, Illinois Court of Appeal, 2002. This is about your honors, respectfully, what the common man and woman in society believed and thought when they were told felon and convicted felon, even worse than felon, rather than told misdemeanor or misdemeanor. And I follow up on Nehemiah's sort of a hypothetical, I guess, a counterfactual, because it's so close, so much of the facts. When we ask you where they had said she said, let me add something to it, if they had said. He was convicted. Of a crime. Sentenced to prison for conduct, which led to the death of 29 people, we wouldn't be here, would we? We would be here. That's false. That's false. Yes, you're right. The conduct is not related at all. Not related. In fact, let me give you some quotes, because that's one of the problems with every single thing the defendant said. They're always implying that Don Blankenship somehow was responsible. No, I didn't say responsible. Well, I said related conduct related. And that's that's that false or not. When you say related, it infers, frankly, that he was responsible and that that court found him responsible in some way for either causing the explosion or causing the death. Let me read you some quotes directly from the trial court transcript, Your Honor, in the criminal court. Mr. Blankenship was not charged with or convicted of causing the explosion at Upper Big Branch or with causing the deaths of any miners at Upper Big Branch. Mr. Blankenship was not charged with causing the mine explosion at Upper Big Branch. Here's another quote. In fact, neither the cause of nor the responsibility for the explosion is at issue in this case. And I might add, by the way, when Don Blankenship was literally on trial for his life in the trial court proceeding, it was 40 miles away from that terrible disaster. The galley was filled with families who had suffered terribly over the loss of their family members. The jury, of course, ruled and the jury came down and the people spoke through the jury and the jury said Don Blankenship is not a felon. So you would say because they said related, that would give the inference that he did. So that would be here right for that. I think we very possibly hear how broad it is. OK, but let me give you something else. Very so important. Your time is up, so you better you better wind it up. The judge Napolitano situation is critical. He comes in on August 25th. He testifies Don Blankenship convicted of manslaughter. It was brought to his attention immediately by Mr. Blankenship's campaign team. I wasn't convicted of manslaughter. The evidence shows that day after day after day, Mr. Napolitano, Judge Napolitano and his producer were approaching Fox. We want to get back on. We want to retract. We want to get back on. Please, we want to retract. He's only convicted of a misdemeanor. The evidence shows that Fox and friends would not let him back off for that, although it would let him back on and talk about something completely different. Martha McCallum, who had clear animus towards Don Blankenship, would not let him back on to correct that. That is more than a mere fairly failure to retract. I understand how failure to retract is just one thing you look at for actual mouth. That was doubling down on a lie, doubling and tripling down on a lie, a normal failure to retract. Somebody that wants to do retract and the publication says no. Here, he said, I want to retract. Please, I want to come on. And how does Fox know it needed to retract? Because two weeks after the primary, remarkably, Martha McCallum had Judge Napolitano on to do the retraction. But even then, he didn't address the manslaughter statement that he made. He talked again about the felon, and he never even stated that Mr. Blankenship was a felon. We all wish he had done more of a retraction. But the real point here is, is that the Fox hierarchy, and it can certainly be reasonably inferred it was the Fox hierarchy and all of these people. They made sure that he was not coming back on to talk about Don Blankenship and manslaughter until after the primary was over. That's much more than a mere failure to retract. In fact, it is a doubling and tripling down with actual malice to make sure this lingered, this lie, this falsehood lingered in the minds of the public at large. I'm out of time. I apologize. Thank you. Thank you, Mr. Early, Mr. Bain. May it please the court. My name is Kevin Bain. I represent all the defendants in this case. Not only is there no clear and convincing proof of actual malice in this case, I submit there's compelling evidence that there was no actual malice. What the plaintiff has to prove in this case is that these defendants knew that what they're about to say was false or had a high degree of awareness that it was probably false. And they must prove that by clear and convincing evidence. So let's consider what a jury would have to find in this case. A jury would have to find that the defendants essentially said to themselves, I know Mr. Blankenship is not a felon, or I realize that it's probably false to say that he was, but I'm going to say it anyway. I think about that. A reporter is consciously aware that the term felon is false or probably false. The word isn't key to his report or her report. It's just one word to convey the idea that there was a conviction, serious conviction. The word doesn't make this story any more powerful. It doesn't get this story any more attention. The reporter is going to subject himself to criticism, and he might even look stupid if you use the word he knows is untrue, but he does it anyway. That doesn't make any sense. So what the plaintiff has to prove in this case is something that makes no sense. That's the first level of argument I've got here. The common sense. I'm not sure that that goes really very far, because let's say someone had actual malice and said, I know he's a misdemeanor, but I'm going to make him look like a felony because I just don't want him to succeed in the primary. And I've been and our position or our network is that we don't want him to succeed. So we're going to call him a felon. That makes sense. The felon, the felon. We're going to call him a felon in order to cause him not to be elected. You said it just doesn't make sense to do that. I say it could make sense if there was evidence to show that direct malice, that they intended to use the word felon in order to aggravate his wrongdoing and try to persuade the people not to elect him. And it seems to me that's their thesis, whether they got the evidence to support it. But I'm just pushing back a little bit on your notion that there would be it wouldn't make sense for a reporter to say it. I say, I think they could have some common sense there. I would say, Your Honor, the word felon is the least of it. If they really want to make him look bad, they would have talked about the mine explosion that killed twenty nine people. They talked about that. They talked about the convictions. And I mean, there was a big political debate going around. And he certainly was a center of attention. And the press covered it all. Well, Your Honor, I guess what I would say to that is that many of them just used it in passing, saying convicted felon. And when the story was about many of the stories were about, say, the fact that that Mitch McConnell and Donald Trump were opposing the plaintiff's candidacy. And so the word felon is a passing reference in the course of a discussion about something else. But let me get to the second point, and that is that the common understanding of this word felon is someone convicted of a serious crime. If you ask someone in the street what a felon is, they'll probably say it's someone convicted of a serious crime. If you look in the dictionary, the definition is someone convicted of a serious crime. The judge said it was a serious crime. So it's not surprising that over 100 media outlets use the word felon. And it doesn't. And it's hard to believe that that 100 defendants, 100 media outlets or 15 defendants use it knowing it was false. But there's a third level of evidence here, the contemporaneous evidence of what these actors actually intended. Mr. Blankenship contact exactly two of the defendants to point out that the word felon was inaccurate. In both cases, the immediate reaction of the reporter was surprise and confusion. Mr. Cavuto at Fox says on the air, when Andrew Napolitano is on, they're interviewing Blankenship. Blankenship says, I wasn't a felon. I was convicted of a misdemeanor. And Cavuto says on the air, live spontaneously. So what are you if you've served time in jail? Blankenship explains. Cavuto says again, well, that would be a little more than a misdemeanor, right? And when Mr. Blankenship leaves, Napolitano, who was a judge, says he was right. It wasn't a felony. It was a misdemeanor. And Cavuto says to Napolitano, so just serving a year in jail doesn't make you a convicted felon. Napolitano says that's correct. And Cavuto says, and that was his point. And by the way, there was no refusal at Fox to correct the reference to manslaughter. Mr. Napolitano simply said, I'd like to go on and discuss the complex legal issues surrounding Mr. Blankenship as one of three stories he was proposing to Fox. And the editors said, the producer said, we like the third story. He didn't say, I made a mistake when I said manslaughter, I want to get on and correct it. He didn't say that to anybody. There was no affirmative refusal to correct that. And as your honor pointed out, the word manslaughter is not part of this case. They concede Mr. Napolitano didn't have any actual malice and he never said felon. So that's the first case. The second time that the plaintiff campaign manager actually contacted one of these defendants was when the campaign manager contacted Meredith McGraw at ABC to say, hey, that was a mistake. McGraw tells John Verhovic, who has said felon, hey, we've got to correct that. And immediately response from John Verhovic in an email is, Meredith, can you send me the exact language on this? Blankenship was sent to federal prison, but he was not convicted of a felony. Later on, when she says, yes, that's right, he says, sorry, I thought I had it right on that. I had seen it in an earlier story. That's my bad. I wish I'd been more careful. So maybe you could argue that he was negligent, but negligence isn't the standard. And Mr. Blankenship surely understands the surprise and confusion that Mr. Cavuto and Mr. Verhovic had. He testified in this case. I don't know of anyone that's heard of anyone going to prison for a misdemeanor. I don't know that anyone in the media has ever heard of such a thing. So I guess I would say that whenever there was notice to one of these defendants that a mistake had been made, the immediate reaction was, oh, my goodness, how could that be? And then when they're told it's this way, it was they correct it on the spot. And there was no effort to contact any of the other defendants to say they had made a mistake. Yet there is some contemporaneous evidence there as well. Counsel talks about Chris Hayes and his credibility. He says he knew it was a misdemeanor. Two and a half years ago, two and a half years ago, Hayes had said it was a misdemeanor. But the night before he went on the air to say felon, he was having a conversation with his producer and the producer actually records these conversations. You might ask, why is the producer recording the correspondent? Well, it's so that he can know exactly what to put in a script when there's a script. So he records the conversation. But there's two competing pieces of evidence. You have the 2015 emails back and forth between Chris Hayes and some of the other employees. Yes. And then you have these 2018 email in the conversation with the producers. But those two items of evidence are competing. So was the district court engaging in some type of balancing or weighing that evidence? Because the plaintiff has the burden of proving by clear and convincing proof there was actual malice. And in Mr. Hayes's case, there's one piece of evidence that negates any inference you might draw from either of those other pieces of evidence, one of which is two and a half years ago when he did say misdemeanor. And the other is several months ago when he had done a piece showing graphics. There's no evidence that Mr. Hayes had ever read those stories, the graphic headlines of which were put on the screen. So there's no evidence they knew the content of those stories. But the contemporaneous evidence, which proves beyond any doubt what he believed, was the night before when he was talking to his producer in a recorded conversation. And he says, and the producer saying, well, let's run that advertisement that Mr. Blankenship is running, where he says, you know, Hillary should go to prison, lock up Hillary. And what's Hayes's immediate reaction? An expletive, a holy mackerel, like that's a convicted felon, dude. So his immediate reaction on the spot was felon, which is the exact word he used the next day on the air. So that's with that evidence of what was in his mind, contemporaneous evidence of what was in his mind that day, there can never be clear and convincing proof that, in fact, he knew what he was about to say was untrue. And if I might, I know you don't have to decide the case on this ground, but let me say a word about falsity. They have the burden of proving that this was materially false by clear and convincing proof. I would say, Your Honors, it's impossible for a jury to conclude by clear and convincing proof in the circumstances of this case that the word felon was false. I'm not arguing that it would never be false to call a person a felon who is only convicted of misdemeanor. I am arguing that in this particular case, which involved, in the words of the district court that sentenced Mr. Blankenship, a crime, very serious conduct, a very serious crime in this context. What was the conduct that the court said was serious, made a serious crime? The conspiracy to violate mine safety standards. That was it was a conspiracy to violate mine safety standards. And then the conviction was prompted by the explosion that killed 29 people. And the sentencing judge said, This is a serious crime. Your conduct was very serious. In this case, the crime fits the dictionary definition of a felon, someone convicted of a serious crime. This court has upheld summary judgment on the ground of substantial truth in a number of cases. In one case, PBM Products against Meade Johnson, a Lanham Act case. The court affirmed summary judgment on the grounds of substantial truth. And he looked at it, looked at a dictionary definition of the term lie, which could mean simply a falsehood or a deliberate falsehood. And the court said, Well, one definition is it's just a falsehood. So the word was substantially true. So that's one case in which the court looked to a dictionary to define substantial truth and took one of two definitions and said, Well, that one fits. It's true. The question, of course, as this court has said, is whether the gist or the overall effect on the reader or viewer would be materially different. If instead of saying Mr. Blankenship was a felon, they had said he was a convicted criminal who was sentenced to a year in prison and who received a quarter of a million dollar fine. Now, as your honor said, that's not materially different from what was said. Indeed, even in a technical matter, it's hard to say that the error here would materially, if you look at it in a strict legal sense. In many states, this crime punishable by one year in prison would be a felony. It's a misdemeanor in only about half the states. So even technically, it would have been true in half the states. But the fact is the test is not tactical meaning or legal meaning precision. It's substantial truth in what the effect was on the reader or the reasonable viewer. And I submit that the effect would have been no different if these defendants had said a criminal, convicted criminal sentenced to a year in prison and received a quarter million dollar fine. But even if you don't want to decide the issue on the case on the grounds of substantial falsity, that colors the actual malice argument. Because what all of these defendants have testified to is consistent with a common understanding, common usage of the term felon. So it's not like the testimony doesn't make any sense. And so on the credibility issue, the court would have to, the juror would have to decide by clear and convincing proof that the choice of one word rather than something else that meant something close or that that was deliberate and intentionally false. And I submit that it would probably be impossible to find material falsity and even more difficult, more impossible to find that in view of the contemporary evidence, the common usage, and quite frankly, the fact that it doesn't make sense that someone would consciously say, I'm going to use the word felon, what a criminal would do, and if I really want to make my case really bad, I can talk about the explosion, I can talk about the fine, I can talk about the prison sentence, and many of these defendants simply pass right over. Some of them didn't explain after they used the word felon that it was a conviction for violating federal mine safety standards and he got a year in prison. So in that case, you've got all the facts right before you of the crime, concededly true, one word felon wasn't legally precise. How does that make it false? How does that support a finding of actual malice? I submit, Your Honors, that it does not. The main argument on the other side is that at some point, some of these defendants had some level of awareness that Mr. Blankenship was not a felon. But that is a long way from evidence that any of them had a high degree of awareness that A, it was a misdemeanor, and B, that meant that the word felon doesn't fit. So the evidence of prior notice is oftentimes something that was uttered in Mr. Hayes' case two and a half years ago, or many months ago, or something that was on live television, easy to miss, something that was buried in a document and didn't stand out. What stood out to every one of these defendants, as they testified to, was that he served a year in prison for a very serious crime. So they thought that the word felon fit. And think about this. Neil Cavuto, they talked about, was a 35 year journalist who had worked on the McNeil-Lehrer report at PBS, at NBC, at CNBC before coming to Fox. Now, he's jeopardizing his entire career and his entire reputation if he uses a word he knows is untrue. That's why I submit to Judge Niemeyer, it's hard to believe that someone with that kind of a record would say something he knows is untrue when he can make the same point using a different word. That's what they have to prove by clear and convincing evidence. And as I said, all they can come up with is some evidence, in some cases, there was some level of awareness at some time in the past. And there's no evidence that at the time that these reporters used the word felon, that at that time, they had a high degree of awareness that, oh, it was only a misdemeanor and that means I can't call him a felon. Many of them testified, understandably, that I didn't even realize there was a difference between misdemeanor and felony. Or I wasn't thinking about that at the time, I was just trying to use a word that would convey to my readers and my viewers that this was a serious offense. And so felon seemed to work. And so they used it. They also, they talk about how, Nelson said that Mr. Cabuto knew that the word felon was wrong. The evidence there is so thin of his knowledge. Another Fox correspondent, Peter Ducey, made a fleeting reference to a misdemeanor in the middle of an hour-long program on live television. There's no evidence that Mr. Cabuto even noticed that one word on live television at the time, much less remembered it two weeks later. Here's what Mr. Ducey said on live television that counsel says ought to have been noticed that this wasn't, that he wasn't, that Blankage wasn't a felon. Ducey said, Blankage is best known here in West Virginia as being a former coal baron who recently served a year in jail on a misdemeanor conviction tied to his role in a mine collapse that killed 29 people. There's a lot of information that sentence spoken on live television. Misdemeanor is the least of it. Coal baron, year in jail, mine collapse, killing 29 people. That's what jumps out at you at the time. It's hardly surprising that Mr. Cabuto didn't catch it at the time and call it to mind two weeks later. He does a two-hour live television program six days a week and an hour live television program five days a week, all unscripted. Ducey's statement was on live TV and Cabuto speaking two weeks later on live TV, 15 minutes into an unscripted program. He spent the first 15 minutes talking about Robert Mueller, James Comey, Donald Trump, Roger Stone, Rudy Giuliani, Conor Lamb, Martha Stewart, Stormy Daniels, and then he finally gets to Blankenship and he uses the word felon. It doesn't make any sense that he sat there and said, I know it's wrong, but I'm going to say it anyway. That's, that's unreasonable. No reasonable jury could find that by a preponderance of the evidence and certainly not by clearing convincing evidence. So, you know, I just don't think that the evidence in this case comes close to approaching what the plaintiff must show. He talks about they're entitled to reasonable inferences. Of course, they're entitled to reasonable inferences, but they're not entitled to unreasonable ones. And they're certainly not entitled to, to any sense that, that the unreasonable inferences amount to clear and compelling, clear and clear, compelling, clear evidence of actual malice. He talks about credibility, but while it's true that all of these defendants said, as every defendant does in every libel case, I believed what I was saying is true. Okay, disregard that testimony if you must. Although they all had good reasons why they believed it was true and they explained their reasons, which make a lot of sense that this is a, this is how I understood the word. I'm not a lawyer. In fact, none of these journalists were even covering the criminal case. They didn't write about the trial. They were called, they were covering a political campaign, a political campaign in which Mr. Blankship was a very controversial figure. The President, President of the United States and, and, and the majority leader are trying, of his own party, are trying to defeat him. And he and Mitch McConnell are engaging in name calling back and forth. He, he calls Mitch McConnell cocaine Mitch. One of the headlines is, you know, unusual campaign, quote, cocaine Mitch. So that was the context of these reports. These reporters are not, they're not court reporters. They're not covering the courthouse. They weren't covering the trial. They were covering a campaign and they want to refer back to a trial that had taken place. And so they use the word felon. Even if you disregard their testimony, there's no affirmative evidence, no affirmative evidence established by clear and convincing proof that these reporters or any one of them actually said that there and said, well, I know this is probably untrue, but I'm going to say it anyway because it'll make, why would he do that? Why not say convicted criminal? That's the obvious thing to say. If you have any doubt about one word, you'd use that word. Of course. And how would, why would 15 people make that decision? Indeed, as Mr. Blankenship says, over a hundred media outlets use the word. They only use the word because it makes sense. There's no evidence. There's clear and no clear and compelling evidence that anybody here use it knowing to be false or believing it to be probably false. Thank you. Thank you, Mr. Bain. Mr. Early, time reserved. Thank you, Your Honor. I believe it was Justice Giles who started by asking who should, whose credibility is on the line here for a jury. You know, I listened, I just listened to the presentation from the opposing side and one would think that these, uh, these highly intelligent people, Chris Hayes, I may not agree with him in certain ways. The man is brilliant. Neil Cavuto is brilliant. Martha McAllen is brilliant. Mitch McConnell's brilliant. You know, I, uh, I'm not sure that gets to the problem because the question is a linguistic problem and the evidence, not uniformly, but most of the evidence that you've advanced were people that were confused about the term felony and assumed that when, that the important message that they conveyed was that the man served a year in jail. And the question then is what do you call someone who served a year in jail for a crime? And, uh, uh, basically, uh, these people were saying convicted, that's a convicted felon. Uh, as you know, under federal law, uh, a person convicted for a crime in which the sentence exceeds one year is a felony. And, uh, but I don't think anybody was thinking about those terms. I think they were, uh, uh, using the word felony to communicate the seriousness of it by always adding that he served a year in jail. And, uh, uh, uh, the task that you have to come forward with is that when they use the word felony, they used it deliberately in contradistinction with an existing understanding, uh, in order to misrepresent that fact about, uh, uh, make a false statement about, uh, about the situation. Cavuto, even at the very end, after it was explained to him, he says, it doesn't make sense. Somebody served a year in jail and it's not a felony. And he stood corrected. But the point is, does that, does that communication represent the intent that's required? Your Honor, respectfully, uh, in terms of whether it's merely linguistics or not, this is for a jury to decide. Oh, it's a matter of law. Well, the, the question is when you bring forth evidence that's adequate to satisfy the standard, then you get a jury call. But until then you have to satisfy two things. One, you have to satisfy the actual malice. And number two, even on summary judgment, you have to satisfy the clear and convincing standard. What was that? Anderson said that, or? Your Honor, it's a matter of law if there's no material, uh, issues of fact, and there are no issues of material fact that, in other words, you have to rise to the level of showing what is required. No doubt. And we did. That's the issue. That's, that's, that's that issue on this appeal. We did you, and that's what we're debating. But we're not debate saying that because this whole thing, uh, uh, there's confusion about their understanding about felony or not felony. And when they, uh, used it here and didn't use it here, the question is what was the state when they used the wrong term? And that's why a jury should hear directly from Neil Cavuto, uh, Martha McCallum, S.E. Cup, Dana Bash, and, uh, and Chris Hayes, among others, Dennis Horgan, also of MSNBC, who wrote a script knowing that Don Blankenship was convicted of a misdemeanor, wrote a script that, that, uh, that, uh, Joy Reed got on the air and just read saying convicted, uh, felon. We need to hear these people and we need to let a jury determine whether or not that actual malice existed. We believe we, we've presented enough to the trial court to get past, uh, a decision as a matter of law. There's a disputed, uh, there are disputed material facts on the actual malice issue. Credibility should be determined by a jury. All reasonable inferences should be determined by a jury. As far as circumstantial evidence, the law is clear. Circumstantial evidence is special evidence of concerted activity is as probative as direct evidence. That's a Jane Doe case. A jury may make reasonable inferences from circumstantial evidence even in a criminal case. That's the Martin case. Circumstantial and direct evidence contain the same inherent probative value. It is up to the jury to weigh the evidence. This is so even in criminal cases. That's West Virginia versus Guthrie, 461 Southeast 2nd, 163, 176, 1995. What we have here is, you know, nobody in Fox said the word felon or convicted felon until an email came out. An email from the boss, the boss being Rupert Murdoch on May 6th. Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time. Anything during day helpful, but Sean and Laura dumping on him hard might save the day. That's May 6th. That's with the polls surging. Let me ask you something on that. That was sent to some employees, right? That was sent to the really the leaders of the news organization, Suzanne Scott and Jay communicated to the reporters. Yes. Is that right? We say that a jury can reasonably infer that was communicated to the reporters because as I call it, the Fox five right after that email, there were five separate instances in the day right before the primary election of Don Blankenship being called a felon or a convicted felon. This is not only evidence of the conspiracy that went on. It's not only evidence of the reasonable inference that a jury can draw between Mitch McConnell's emails mentions the term felon. That's true. That's true. But why did they all start jumping to the word felon? A reasonable jury can infer. We argue that destroying Don Blankenship by these people on the air sat, made the boss happy, made Donald Trump happy, made Mitch McConnell happy. I've got a list of reasonable inferences here. I'd like to get to some of them that the jury, that the court should have drawn in Don in Don's favor, did not draw. And then a reasonable jury could draw. As to Fox, a reasonable jury can infer that Fox intentionally failed to allow Napolitano's retraction. A reasonable jury can infer that the term felon was used with actual malice to harm Don as opposed to using the term misdemeanor. I'd say they would not use misdemeanor. I'd say they'd use criminal. You have convicted criminal who served a year in jail. I think their important message throughout all of them, they all questioned how can a person serve a year in jail and not be a felon? And this is the type of mental attitude that most of them revealed. Now, not all of them. You have quite a list in your brief. I don't remember how many there were. And each one we would have to address and do have to address. But my point is the generality that felon is was deliberately used with knowledge that that was erroneous seems to be just the opposite. They seem to use it thinking it was the appropriate label. Well, Your Honor, again, we this should be before a reasonable jury. This is a soundbite business. They don't go through all those words you're suggesting. It's a soundbite business. There was another soundbite that could have been used. Convicted misdemeanant. Haven't heard that one yet. That was the God's honest truth, by the way. A reasonable jury can infer that Fox did not allow Napolitano to retract because with actual malice wanted to continue to allow the lie to linger. Can reasonably infer that Fox called Don a felon five times after their Murdoch email with actual malice. Can reasonably infer that Fox and McConnell conspired to defame Don Blankenship. A reasonable jury can infer that everything, frankly, or so much of what Chris Hayes said in his deposition lacked credibility. The same with Dana Bash. I'm at the end here. I could go on and on about that. So I'd just like to say a few words in closing. In closing, Your Honors, and thank you so much for hearing us out today. In this day and age of ongoing questions about the strength of our elections, ongoing questions about government control, deep state control of candidates, ongoing questions about the truth and veracity of the media. It is time to let the people speak. This should be sent to a jury just like Don's criminal case went to a jury when they came out in much more difficult circumstances, said Don Blankenship is not a felon. They understood the difference between a felon and a misdemeanant. People, regular people. And so we respectfully ask this case be reversed and remanded back to the trial court. And because defamation, and of course, we're asking defamation claim to be sent back. We also would ask then that all the claims conspiracy and false light be sent back as well. Thank you so much. Thank you so much. Thank you, Mr. Earle and Mr. Bain for your argument. We can't come down and shake your hands, but know we appreciate your arguments. But this is kind of rare because I guess you're with us again for the next argument. So we can proceed on with that.
judges: Roger L. Gregory, Paul V. Niemeyer, Patricia T. Giles